UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LANELL GRIFFIN,

       Petitioner,

                                         Case No. 5:05-cv-155
v.                                   Hon.  Janet T. Neff

CAROL HOWES,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

### A.      State court proceedings

Petitioner was convicted by a jury of possession with intent to deliver greater than 225 but less than 650 grams of cocaine, M.C.L. § 333.7401(2)(a)(ii). *People v. Griffin*, No. 216720 (Mich. App. Feb. 25, 2000) (docket no. 23).  His conviction arose following a traffic stop, where petitioner was found to be the driver and sole occupant of a vehicle which contained in excess of 500 grams of cocaine in the trunk.  *Id.*  The Michigan Court of Appeals summarized the evidence supporting petitioner's conviction as follows:

> At trial, defendant conceded that the sole issue material to defendant's guilt or innocence was whether he had knowledge of the cocaine found in the trunk of the car. A narcotics officer who was qualified as an expert on the value of cocaine testified that the more than 500 grams of cocaine found in the trunk of the car had a value of between $9,000 and $30,000 depending upon how the drug processed and sold. Considering that defendant was the sole occupant of the car at the time it was stopped, the jury could reasonably infer that defendant had knowledge of the cocaine

as it is unlikely that an individual would entrust such a highly valuable cargo to an unknowing transporter. It could likewise be inferred that the writing on the back of the business card found during the arresting officer's search was consistent with a record of drug sales or purchases. While ownership of the card was disputed, the prosecutor also introduced an address book found on defendant that contained an abbreviated name identical to one of those found on the back of the card, strengthening the inference that the card was in fact defendant's. Furthermore, the claimed owner of the card, who was defendant's cousin [Glen Evans] and the owner of the car in which the cocaine was found, testified at trial that although he received that business card from a friend, he could not recall that friend's name. Defendant's cousin further stated that he did not know the real names of any of the people whose names were abbreviated on the card, although he had written them down himself, and could not remember what the numbers printed next to each name represented. Moreover, this individual stated that he was certain that he and defendant had no common associates or friends.

*Id.*, slip op. at 2-3.  Petitioner was sentenced as a second habitual offender, M.C.L. § 333.7413(2),

to a term of twenty to sixty years.  *Id.*, slip op. at 1.

Petitioner presented the following issue in his direct appeal:

I.      Whether there are reasonable grounds to believe the outcome of the trial was affected when the court improperly admitted testimony through the chief prosecution witness, trooper Coleman, regarding a drug courier profile as that drug profile allegedly applied to [petitioner], therefore [petitioner's] conviction must be reversed?

*See* docket no. 23.  Petitioner included five arguments related to this broadly worded issue:

A.      Trooper Coleman's drug courier profile statements and testimony admitted in error.

B.      There was an "aura" of special reliability surrounding Trooper Coleman's testimony.

C.      The trial court failed to give a limiting instruction on the jury's use of the profile testimony.

D.      Trooper Coleman was not qualified as an expert.

E.      The prosecutor's "wholly circumstantial case was not overwhelming."

2

*Id.* The Michigan Court of Appeals affirmed the conviction and denied petitioner's motion for a

rehearing. *Griffin*, No. 216720 (Opinion Feb. 25, 2000) (Order May 24, 2000).

Petitioner, through his counsel, raised three issues in a delayed application for leave

to appeal to the Michigan Supreme Court:

I.     Is there a reason to issue a peremptory order of reversal of [petitioner's]
       conviction?

       Does the introduction of the drug courier testimony by Trooper
       Coleman linked [sic] [petitioner] to the drugs in the trunk based on
       an opinion resting on unreliable drug courier profile analysis and the
       expert who gave this opinion was allowed to link [petitioner] to the
       drugs based on a match between innocent conduct, and the profile,
       thereby violating the rule in [*People v. Hubbard*, 209 Mich. App. 234
       (1995)], so as to require a new trial?

II.    Is there a reason for granting leave to appeal?

       Should this Court grant leave to issue an opinion clarifying the legal
       grounds for limiting or excluding drug courier profile testimony due
       to its inherent unreliability under MRE 401, MRE 403, MRE 704, or
       under all these rules?

              First, the "background exception" in [*People v.
              Murray, Jr.*, 234 Mich. App. 46 (1999)] does not
              apply here since the drug courier profile opinion
              testimony given by Trooper Coleman was not relevant
              at trial to show the officer's motives in making a stop
              or a search.

              Second, the modus operandi exception also does not
              apply here since the officer found only otherwise
              innocent behavior to fit the profile within the
              knowledge of an average juror.

III.     Is this an issue of substantial public importance?

"Yes," because admission of drug courier profile opinion testimony creates unfair prejudice by inviting the jury to base a finding of guilt on stereotyped racial judgments.

Delayed application (docket no. 24).  The Michigan Supreme Court denied the delayed application for leave to appeal.  *People v. Griffin*, No. 117280 (Mich. March 27, 2001).

Petitioner then filed a motion for relief from judgment in the trial court pursuant to MCR 6.500 *et seq.* raising nine issues as follows:

I.      That the trial court erred in admitting Glen Evans' 5th Amendment testimony.[1]

II.     That the Court should reverse based on the prosecutor's improper closing arguments regarding inferences to be drawn from Glen Evans' 5th Amendment testimony.

III.    That the trial court erred by allowing the introduction of drug courier testimony.

IV.     That the Court erred in denying [petitioner's] directed verdict motion.

V.      That the Court should reverse based on the cumulative errors, which cannot be deemed harmless.

VI.     That [petitioner] was denied effective assistance of trial counsel.

VII.    That [petitioner] was denied effective assistance of appellate counsel.

---

[1] Glen Evans, petitioner's cousin, testified that he lives in Riverdale, Illinois, and that he was the owner of the car. Trial Trans. I, 185-87.  However, Evans also testified that the vehicle was registered in the name of his mother, Patricia Taylor.  *Id.*  Evans testified that on or about August 19, 1998, petitioner asked Evans if he could borrow the car to pick up petitioner's son in Kalamazoo.  *Id.* at 190.  Evans left the keys with petitioner's nephew.  *Id.* at 191.  Evans testified that he left a number of his belongings in the car, including an Atlanta Braves jacket, work boots, and other "junk," including the card with the names and numbers of his "associates."  *Id.* at 193-94,  201-02.  Evans denied leaving a pager, cell phone or money in the vehicle.  *Id.* at 194.  When asked if he saw a "big plastic bag" (i.e., the cocaine) in the vehicle's trunk, Evans pled the Fifth Amendment.  *Id.* at 198, 205.

4

     VIII.    That M.C.L. §§ 770.1 and 770.2 permit the Court to grant a delayed motion for a new trial, which controls over the rules contained in MCR 6.500 *et seq*.

     IX.    That the "good cause" requirements of MCR 6.508(D)(3) should be waived because there is a substantial possibility that [petitioner] is innocent.

*People v. Robert Lanell Griffin*, Berrien Co. Cir. Ct. No. 98-403728 (Opinion and Order March 21, 2003) (docket no. 25).  The court denied the motion.  *Id.*

     Petitioner filed leave to appeal this order to the Michigan Court of Appeals, raising eight issues:

     I.    The trial court erred in the admission of the testimony of Glen Evans' Fifth Amendment testimony at trial where the prosecutor sought to draw positive inferences of [petitioner's] guilt from it, absent a grant of immunity to allow [petitioner] to confront his accuser, and without a cautionary instruction since that violates his Sixth Amendment and Michigan Constitutional rights of Confrontation and Due Process.

     II.    This court should reverse based on the prosecutor's improper closing argument about the inferences to be drawn from the Fifth Amendment testimony of Glenn Evans, a potential suspect who may have owned the drugs, and whose silence incriminated him.

     III.    The trial court erred by allowing the introduction of drug courier testimony by Trooper Coleman that linked [petitioner] to the drugs in the trunk the lack of reliability is clear given that drug courier profile analysis does not match between his innocent conduct and the profile, so that its admission violates the rule in *People v. Hubbard*, and requires a new trial, and the defense counsel erred to present expert witness testimony to rebut Trooper Coleman's unreliable lay and expert opinion testimony regarding the alleged link between [petitioner's] conduct and that of a drug dealer, and in failing to seek a limiting instruction and in failing to object to admission of the testimony based on those facts under MRE 401, MRE 403, MRE 701, MRE 702 or MRE 703 and in failing to object to the admission of evidence that [petitioner] was on parole.

     IV.    The Circuit Court erred in denying [petitioner's] directed verdict motion, and this same court should grant a new trial to prevent a miscarriage of justice, since the evidence was insufficient as a matter of law to permit a rational trier of fact to find each element of the crime charged beyond a reasonable doubt.

5

V.      This court should reverse based on the cumulative errors committed at trial and, the fact that none of the errors can be deemed to be harmless.

VI.     [Petitioner] was denied constitutionally effective assistance of appellate counsel when valid issues were waived in his first appeal.

VII.    The interest of justice standards of M.C.L. §§ 770.1 and 770.2 permit this court to grant a delayed motion for new trial at any time in the interest of justice and this substantive right controls in this case over the procedural rules contained in MCR 6.500 *et seq.* limiting post-conviction to cases which a criminal defendant can demonstrate cause (or actual innocence) and actual prejudice.

VIII.   The good cause requirements of MCR 6.508(D)(3) should be waived because there exist a substantial possibility that [petitioner] is innocent.

Delayed application for leave to appeal (docket no. 25).

The Michigan Court of Appeals denied the application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Robert Lanell Griffin*, No. 254433 (Mich. App. Aug. 20, 2004).  Petitioner raised the same eight issues in his application for leave to appeal to the Michigan Supreme Court, which denied that application because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Robert Lanell Griffin,* No. 127236 (Mich. May 31, 2005).

**B.      Federal habeas claims**

Petitioner, through counsel, filed a lengthy and rather confusing habeas petition on October 28, 2005.  The original petition contained three groups of claims.  First, petitioner presented "newly discovered evidence" that he possessed a driver's license for both Illinois and Michigan at the time of the search.  Second, petitioner contested the "invalidity of arrest and illegality of the search."  Third, petitioner raised a myriad  of claims which he described as "ineffective assistance

of counsel claims, Sixth (6th) amendment claims, denial of a fair trial, due process claims, and failure to establish all elements of the crime beyond a reasonable doubt."

After reviewing this original habeas petition, the court found that it "does not clearly identify his grounds for habeas corpus relief" and directed petitioner to file an amended petition (Order to file amended petition) (Dec. 8, 2005) (docket no. 5).

On January 3, 2006, petitioner, through counsel, filed the amended petition raising four issues:

> I.      Newly discovered evidence
>
> Petitioner possessed both a valid Illinois License and Michigan License at the time of his arrest. More fully set forth on Pages 16-18 of Petitioner's Original Petition for a Writ of Habeas Corpus which [sic] incorporated by reference.
>
> II.     Invalidity of Arrest and Illegality of Search
>
> Petitioner incorporates by reference the facts set forth on Pages 18-31 of his Original Petition for a Writ of Habeas Petition.
>
> III.    Ineffective [sic] of Counsel Claims -- Petitioner incorporates by reference Pages 24-31 of his Original Petition for a Writ of Habeas Corpus.
>
> IV.    Reservation of Right to Supplement Petition as the case law and facts dictate. See Pages 31-33 of Original Petition for a Writ of Certiorari.

Amended Petition (docket no. 6).

The amended petition appeared to incorporate the claims set forth in the entire original petition "by reference." The court, however, rejects petitioner's attempt to "incorporate by reference" the original petition if previously rejected. To view the amended petition as simply

restating the claims as set forth in the entire original petition is inapposite to the court's December 8, 2005 order, which required petitioner to identify the specific grounds at issue.  Accordingly, the court will limit its review to the issues set forth in the amended petition.

### III.    Petitioner's fourth claim

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  The fourth claim of the amended petition, i.e., "reservation of right to supplement petition," is not a ground for habeas relief under § 2254. Petitioner's ability to supplement or amend the petition is a procedural matter subject to the requirements set forth in the Rules Governing Section 2254 Cases in the United States District Courts and the Federal Rules of Civil Procedure.   Accordingly, petitioner's fourth claim should be denied as improper.

### IV.    Exhaustion and procedural default

### A.    Unexhausted claims

 Before petitioner may seek relief in federal court pursuant to § 2254, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981);  *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).   Based on the record of the state court proceedings, petitioner did not raise claim I (newly discovered evidence) or claim II (illegal search/Fourth

Amendment) in the state court proceedings.  Accordingly, petitioner did not exhaust these two claims for purposes of federal habeas review.[2]

As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice to allow the petitioner to present his claims to the state courts.  *See Rose v. Lundy*,  455 U.S. 509, 518-20 (1982).  Here, however, petitioner has already filed his motion for post-conviction relief pursuant to MCR 6.500 *et seq.* and has no further avenue left to exhaust in the state courts.  Because petitioner failed to give the state courts a "full and fair" opportunity to resolve claims I and II and he cannot cure the failure because the state court remedies are no longer available, these two claims are subject to the procedural default doctrine.  *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004).  For the reasons set forth below, I find petitioner's claims I and II are procedurally defaulted.

**B.      Procedural Default**

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural

---

[2] The trial court found that an illegal search and seizure issue was not presented in petitioner's motion for relief from judgment and that, in addition, petitioner had stipulated to the constitutionality of the search at trial.  Opinion and order denying motion for post-conviction relief (March 21, 2003) (docket no. 25).

rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

      As previously discussed,  petitioner claims I and II are procedurally defaulted.  In addition, petitioner's claim III (i.e., the ineffective assistance of counsel), which was first raised in his motion for relief from judgment filed in the Berrien County Circuit Court, is also subject to procedural default.  Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal the ineffective assistance of counsel claims because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).  The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes.  *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000).  Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal.  *Id.*  As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) precludes habeas review.  *See Howard*, 405 F.3d  at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.  Accordingly, petitioner's claim III is also procedurally defaulted.

### C.      Cause for the procedural default

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner did not allege any "cause" for the procedural default of these claims, or file a reply to the procedural default claim, despite the fact that the court granted him 45-days to do so. *See* (docket no. 9).  For this reason, petitioner has failed to demonstrate cause sufficient to overcome the procedural default.

The court notes that the original petition included a brief reference to ineffective assistance of appellate counsel for failing to raise additional issues on appeal (i.e., counsel "deprived the Petitioner of his rights to effective counsel because he failed to pursue valid claims in Petitioner's Initial Appeal to the Michigan Court of Appeals"), while the supporting memorandum cryptically states that appellate counsel failed to raise "significant and obvious" appellate issues. Petition at ¶ 69(f);  Preliminary Memorandum at p. 19.  Ineffective assistance of counsel may constitute cause for excusing a procedural default, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668 (1984).  Even if the court construed petitioner's cursory claims of ineffective assistance of appellate counsel as cause for the procedural default, petitioner still fails to meet his burden.  "Habeas

11

petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). In the absence of cause for the procedural default, it is unnecessary to consider any prejudice resulting from this alleged error of federal law.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000) ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.

Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted. Petitioner asserts that his arrest and subsequent search were invalid

because he was driving on a valid Illinois Driver's license.  Petitioner's Preliminary Memorandum of Law at 7.  Petitioner summarizes his "new evidence" as follows:

> At the time of the arrest and subsequent search, the Petitioner possessed a valid Illinois Driver's License.  Petitioner is informed and believes that, based upon new information, that Petitioner also possessed a valid Michigan Driver's License at the time of his arrest for Driving on Suspended License which resulted in the search in this case.  These set of facts render [petitioner's] arrest and subsequent search illegal and the Petitioner's conviction must not stand.

*Id.* at 8.

The court disagrees with petitioner's contention that this is new evidence.  First, it is unlikely petitioner would not have been aware of the fact that he possessed two drivers licenses.

Second, the revelation that petitioner may have had multiple drivers licenses has nothing to do with the crime for which he was convicted.  It is not exculpatory scientific evidence, a trustworthy eyewitness account, or critical physical evidence that demonstrates petitioner's actual innocence for possession with intent to deliver cocaine.  *Paffousen*, 2000 WL 1888659 at *3.

Third, the alleged new evidence relates solely to the propriety of Trooper Coleman's search.  Even if the court considered the evidence, it would not entitle petitioner to habeas relief.  Assuming that Trooper Coleman had no basis to search the trunk, petitioner could not obtain federal habeas relief based upon an illegal search and seizure in violation of the Fourth Amendment.  Collateral review of a Fourth Amendment claim alleging an illegal search and seizure is limited by *Stone v. Powell*, 428 U.S. 465 (1976), in which the Supreme Court ruled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at trial."  *Stone*, 428 U.S. at 494.  The application of *Stone* involves two distinct inquiries.  First, the district court must determine whether the state

13

provided a procedural mechanism which, in the abstract, gave him an opportunity to raise his Fourth Amendment claims.  Second, the district court must determine whether presentation of that claim was frustrated by a failure of the procedural mechanism.  *See Gilbert v. Parke,* 763 F.2d 821, 823 (6th Cir. 1985); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).  With respect to the first inquiry, petitioner has failed to establish that Michigan lacks such a mechanism.  It is well established that Michigan provides criminal defendants with an adequate procedural mechanism to raise Fourth Amendment claims.  *See, e.g.*, *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000); *Cowan v. Stovall*, No. 06-cv-13846, 2008 WL 659715 at *4 (E.D. Mich. May 7, 2008) ("it is undisputed that Michigan has a state procedural mechanism, which in the abstract presents a full opportunity to raise a Fourth Amendment claim before trial").  With respect to the second inquiry, petitioner has not shown that a failure of Michigan's procedural mechanisms frustrated the presentation of his Fourth Amendment claim.  For these reasons, habeas review of petitioner's Fourth Amendment claim would  barred by *Stone*.

Petitioner has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, all of his claims are procedurally barred and not subject to habeas review.

## V.      Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  January 21, 2009                                /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).